## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **J. BLAIR HAYES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 08-0150 RCL** |
| ) | |
| **MICHAEL O. LEAVITT,** ) | |
| **Secretary of Health &Human Services,** ) | |
| ) | |
| **Defendant.** ) | |

## FIRST AMENDED COMPLAINT
### (Employment Discrimination)

### Introduction

1.      Plaintiff J. Blair Hayes, brings this action pursuant to Title VII of the Civil Rights Act

of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.,* and 42 U.S.C. § 1981a, to remedy acts of

employment discrimination and retaliation perpetrated against him by the United States Department

of Health and Human Services.  Plaintiff contends that management at that Department –

specifically Curtis Coy, the Deputy Assistant Secretary for Administration and, as such, the Director

of the Office of Administration for the Administration for Children and Families, discriminated

against him because of his race (African-American) and in retaliation for his having previously

engaged in protected civil rights activity (a) by denying him an opportunity to compete for the

position of Acting Deputy Director, Office of Administration in the Summer/Fall of 2006, (b) by not

selecting him for the position of Deputy Director, Office of Administration in January 2007 when

the job was filled on a permanent basis, (c) by providing him with a lower than deserved

performance appraisal for 2006, (d) by soliciting negative comments about him and circulating those

negative comments among the ACF staff, (e) by relentlessly and unfairly criticizing his behavior, and (f) by requiring him to attend special meetings with his manager. As a consequence of these discriminatory/retaliatory actions, Mr. Hayes has been caused to suffer damage to his career, personal and professional humiliation, and emotional harm.

## Jurisdiction

2.      This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(c). Plaintiff filed a formal administrative complaint of employment discrimination and retaliation with regard to the allegation that he was denied an opportunity to compete for the Acting Deputy Director of the Office of Administration with the office that is designated to handle EEO complaints at the United States Department of Health and Human Services' EEO office and that office sent plaintiff's representative of record a final agency decision on that administrative EEO complaint on October 28, 2007, within 90 days of the filing of the initial Complaint with this Court in the instant civil action. With regard to the other claims contained in this First Amended Complaint, plaintiff lodged formal administrative complaints of employment discrimination and retaliation with the same EEO office by August 28, 2007 at the latest (EEO administrative complaints HHS-ACF-0094-2007, HHS-ACF-0335-2007, and HHS-ACF-0062-2007), which is more than 180 days from the filing of this First Amended Complaint – and as of this filing, no final decision has been made with respect to any of these additional administrative EEO complaints.

## Venue

3.      Venue is proper in this judicial district under 42 U.S.C. Section 2000e-5(f)(3), as plaintiff was employed by the United States Department of Health and Human Services in the District of Columbia at the time of each of the actions complained of, records pertaining to plaintiff's

employment are maintained by the United States Department of Health and Human Services in this judicial district, and the actions adverse to plaintiff's employment that are the subject of this civil action were taken in this judicial district.

### Parties

4.    Plaintiff is a African-American male citizen of the United States and of the State of Maryland. Plaintiff is employed by the United States Department of Health and Human Services as the Procurement Advisor in the Office of Administration in the Administration for Children and Families. That position was specifically created for Mr. Hayes as part of a settlement of a civil action filed in this court pursuant to Title VII of the Civil Rights Act of 1964, as amended, under which he was placed in this unique GS-15 position, received $250,000 in damages and had his attorneys' fees fully paid by the Secretary of Health and Human Services. He has held this current job since 2003.

5.    Defendant Michael O. Leavitt is currently the Secretary of Health and Human Services of the United States and, as such, heads the United States Department of Health and Human Services (hereinafter "DHHS"), a department within the Executive Branch of the government of the United States that has employed more than 500 persons in each of the last 20 weeks. Mr. Leavitt is being sued here in his official capacity only.

### Statement of Facts

6.    Plaintiff J. Blair Hayes is a career federal employee with over thirty six years of service, most of which is with DHHS. His career field is government contracting, that is, acquisition management, within Federal Job Series No. 1102. He is qualified at the highest warrant level at DHHS. Until it was disbanded in favor of an external contracting group within the Program Support Center ("PSC") located in Rockville, Maryland, Mr. Hayes was the Director of the Division of

Acquisition Management for the Administration for Children and Families ("ACF"), which constitutes a significant portion of DHHS.

7.    Until its demise, the Division of Acquisition Management was located in ACF's Office of Administration.    As headed by Mr. Hayes, it had as many as ten Contract Specialists who served as Contract Officers, as well as other professional employees who served in support of such Contract Specialists.    As the Division Director, Mr. Hayes was in charge of this operation, which supported with professional acquisition management all the contracting efforts in ACF.    As a GS-15, Mr. Hayes supervised two GS-14 Supervisory Contract Specialists, each of whom, in turn, supervised as many as four or five Contract Specialist as well as support staff.

8.    Mr. Hayes headed AFC's Division of Acquisition Management for more than five years, having been placed in that position as part of the equitable relief awarded by the U.S. District Court after judgment was entered following a jury verdict in his favor in a Title VII action brought to remedy race discrimination and retaliation by DHHS management.

9.    Mr. Hayes became the GS-15 Procurement Advisor in the ACF's Office of Administration in 2003 as part of the settlement of an EEO case he brought in the U.S. District Court alleging race discrimination and retaliation on the disbanding of the Division of Acquisition Management in ACF.    The settlement of that civil action followed the taking of depositions in which it was revealed that top management had targeted Mr. Hayes and his division because of his earlier EEO cases and his success in litigating them.    In addition to creating the special position of Procurement Advisor and placing him in it, the settlement agreement by which that civil action was brought to conclusion also provided Mr. Hayes with a payment of $250,000 in compensatory damages from DHHS and the payment of more than $100,000 in attorneys' fees.    Accordingly, it

constitutes another very significant victory for Mr. Hayes in his civil rights allegations against DHHS management.

10.    While in the position of Procurement Advisor in the ACF's Office of Administration Mr. Hayes officially reported to Robert Velasco (a white man), the Chief of Staff to Curtis Coy (a white man), the ACF Deputy Assistant Secretary for Administration and Director of the ACF Office of Administration. In actuality, though he met with Mr. Velasco and received assigned from him from time to time, Mr. Hayes generally worked directly for Curtis Coy, advising him and other top ACF officials on government contracting matters. In doing this job, Mr. Hayes received high ratings for his work.

11.    Mr. Coy was fully aware of Mr. Hayes's prior EEO activities – and his success in prosecuting those discrimination claims in the past. Indeed, in 2003, Coy was closely involved in the creation of the new and unique GS-15 Procurement Advisor position for Mr. Hayes during the negotiations that led to the settlement of Mr. Hayes's last EEO complaint (see ¶ 9 above), and while Coy was not involved in the dispute in that earlier case, he was certainly aware of it, and it was Coy who insisted that, at least on paper, there be an official buffer between him and Mr. Hayes in the chain of command once Mr. Hayes encumbered the then-being-created Procurement Advisor position.

12.    When Coy's Deputy Director, an African American female who had acted as director prior to Coy's arrival in 2003 and who had merely returned to the deputy director role upon Coy being named as Deputy Assistant Secretary for Administration (and, therefore, Director of the Office of Administration, ACF), retired in January 2006, Coy in effect made Mr. Velasco, his Chief of Staff, the deputy director of the Office of Administration as well. In fact, Coy had created the Chief of Staff position and placed Mr. Velasco in it soon after he came to the ACF Office of

Administration as Deputy Assistant Secretary for Administration so as to have a buffer between himself and the African American female whom he had inherited as his Deputy Director.

13.     In August 2006, Mr. Velasco announced he would be leaving the Office of Administration for a Senior Executive Service ("SES") job elsewhere in the federal government. No announcement was made regarding the filling (either by permanent appointment or in an acting capacity) of either the Chief of Staff position or the Deputy Director position in the immediate wake of Velasco's announcement.

14.     Curtis Coy waited until Mr. Hayes had left on a long-planned summer vacation out of the country to announce that he would fill the Deputy Director position on an acting basis. Coy then immediately engaged in a "solicitation of interest" in becoming the Acting Deputy Director of Administration from those GS-15s who were in the Office of Administration. Mr. Coy waited to announce his desire to fill the acting deputy director position and his solicitation of interest in the job until Mr. Hayes was on vacation because he had reason to know from his contact with Mr. Hayes over the three years they had worked together that Mr. Hayes would be very interested in becoming the Deputy Director of Administration in ACF and that he had the background and experience to be highly competitive for such a position. Moreover, despite his knowledge that Mr. Hayes's knowledge, skills and abilities would make him an excellent Deputy Director for Administration in ACF, Coy did not want him as his deputy because he is an accomplished and well regarded African American male and/or because of his prior success as an EEO complainant.

15.     Thus, it was critical to Coy's scheme to avoid Mr. Hayes being selected as the deputy Director when the position was filled on a permanent basis because of plaintiff's race and prior civil rights activities (and, indeed, to avoid having again a black deputy), to get a white into the position as acting deputy director. In fact, Coy knew the white person he wanted in the permanent deputy job

- 6 -

was Joel Anthony, the GS-15 who headed the small office of Financial Services within the Office of Administration. Accordingly, as part of his overall scheme to place Mr. Anthony in the permanent Deputy Director position eventually, it was vital for Coy to get Mr. Anthony into the position of "acting" deputy in order to assure his competitiveness for the permanent job (as compared to Mr. Hayes) when it was ultimately announced for competitive filling.

16.     Accordingly, Mr. Coy conducted the entire process of naming the acting deputy director from start to finish while Mr. Hayes was on his summer vacation, and this process ended with the naming of the white Joel Anthony as the Acting Deputy Director of the Office of Administration, ACF.

17.     When he returned from vacation, Mr. Hayes was confronted with a "done deal" of the white Joel Anthony as the new "Acting" Deputy Director, and Mr. Hayes's immediate boss. Mr. Hayes had been stripped of any opportunity to "compete" for this acting position and, more importantly, thereby would be placed at a competitive disadvantage in the upcoming competition for the filling of the Deputy Director job on a permanent basis. This was all done by Curtis Coy in an effort to sabotage Mr. Hayes's chances of becoming the Deputy Director of the Office of Administration because of his race and/or his prior successful EEO claims.

18.     As part of his continuing racist and retaliatory scheme to pass over Mr. Hayes for the position of Deputy Director of the Office of Administration in ACF, and to deny him any real opportunity to compete for that position when it was to be filled on a permanent basis, Curtis Coy contrived with Joel Anthony, his preference for the permanent Deputy Director job, to have Mr. Hayes received a lower than usual and than deserved rating for 2006 – though Mr. Anthony never so much as met with Mr. Hayes in his capacity as Acting Deputy Director, much less supervised him.

- 7 -

19.    Also, in retaliation for Mr. Hayes complaining about being passed over for the Acting Deputy Director position, and as additional acts of race discrimination, Curtis Coy began a campaign of harassment against Mr. Hayes which has included, *inter alia*, soliciting negative comments about him and circulating those negative comments among the ACF staff, relentlessly and unfairly criticizing his behavior, and requiring him to attend special meetings with his "supervisory" (though Joel Anthony has refused to meet with Mr. Hayes).

### Statement of Claims

### Claim I – Race Discrimination

20.    As previously stated herein above in paragraph nos. 14-19, defendant, through subordinate DHHS management, has discriminated against plaintiff on the basis of his race.

21.    As a consequence of such race-based discrimination, plaintiff has suffered and continues to suffer career damage, as well as personal and professional humiliation, and emotional pain.

### Claim II – Retaliation

22.    As previously stated herein above in paragraph nos. 14-19, defendant, through subordinate DHHS management, has retaliated against plaintiff for his having successfully brought claims of race discrimination and retaliation in the past and/or for challenging his being passed over for the position of Deputy Director of Administration.

23.    As a consequence of such retaliation, plaintiff has suffered and continues to suffer career damage, as well as personal and professional humiliation, and emotional pain.

### Prayer for Relief

24.    Plaintiff requests that the Court advance this case on the calendar and enter an order declaring that:

- 8 -

(a)     defendant discriminated and/or retaliated against plaintiff by denying him an opportunity to compete for the position of Acting Deputy Director of the Office of Administration, ACF, by passing him over for the position of permanent Deputy Director of the Office of Administration, by giving him an undeserved performance appraisal for 2006, by soliciting negative comments about him and circulating those negative comments among the ACF staff, by relentlessly and unfairly criticizing his behavior, and by requiring him to attend special meetings with his manager;

(b)     defendant is to place plaintiff into the permanent position of Deputy Director, Office of Administration, ACF, with all emoluments and opportunities of that office, retroactive to September 2006;

(c)     defendant is to provide plaintiff with performance appraisals for the period since September 2006 in which he is rated "Outstanding" in the performance of his duties, including in the performance of his duties as Deputy Director, Office of Administration, and shall provide him with such back pay as reflects the pay increases, bonuses, and awards, that such ratings would obtain;

(d)     defendant is to correct its records, including plaintiff's Official Personnel File ("OPF"), so as to reflect the relief ordered by the court;

(e)     defendant is to purge from DHHS files and records all negative comments about plaintiff made to or by Curtis Coy of any of his direct reports;

(f)     defendant is to pay to plaintiff the sum of $300,000.00 in compensatory damages suffered as a result of the racial discrimination taken against him, plus interest thereon, *and* an additional $300,000.00 in compensatory damages suffered as a result of the retaliation perpetrated on him by DHHS management, plus interest thereon;

- 9 -

(g)    defendant is to refrain from any future acts of racial discrimination and/or retaliation against plaintiff;

(g)    defendant is to pay plaintiff the costs of bringing and maintaining this civil action and the administrative charges that preceded it, including reasonable attorneys' fees, pursuant to 42 U.S.C. 2000e-5(k), with interest thereon; and,

(h)    in addition, the Court will order defendant to provide plaintiff with such other and further relief as the interests of justice may require.

## Jury Demand

25.    Plaintiff hereby requests a jury trial on all issues of fact, including the measure of damages.

Respectfully submitted,


David H. Shapiro
D.C. Bar No. 961326
SWICK & SHAPIRO, P.C.
1225 Eye Street, N.W.
Suite 1290
Washington, DC 20005
Tel. 202-842-0300
Fax 202-842-1418
Email - dhshapiro@swickandshapiro.com

Attorney for Plaintiff

### Certificate of Service

I HEREBY CERTIFY THAT the foregoing First Amended Complaint has been served upon defendant by mailing a copy thereof, First-Class postage pre-paid, to his attorney f record Christopher Harwood, Assistant U.S. Attorney, at 555 Fourth Street, N.W., Washington, DC 20530, and via facsimile (Fax no. 202-514-8780), and via to his email mail address (christopher.harwood@usdoj,gov), on this 25th day of February 2008.

David H. Shapiro
SWICK & SHAPIRO, P.C.